IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Ralph Wolfe,                                      :

              Plaintiff               :        Civil Action 2:11-cv-1080

  v.                                             :        Judge Sargus

Commissioner of Social Security,                 :        Magistrate Judge Abel

            Defendant               :

**REPORT AND RECOMMENDATION**

Plaintiff Ralph Wolfe brings this action under 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying his application for Social Security Disability benefits.  This case is now before the Magistrate Judge for a report and recommendation on the disposition of this matter.

**Summary of Issues.**  Plaintiff challenges that administrative law judge's finding that he was not disabled. The administrative law judge concluded that plaintiff retained the residual functional capacity to perform a reduced range of sedentary work.

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the administrative law judge failed to discuss the opinions of plaintiff's treating physician, Dr. Baughman.

**Procedural History.**  Plaintiff Ralph Wolfe filed his application for disability insurance benefits on July 21, 2009, alleging that he became disabled on June 4, 2008, at age 35, by a combination of physical and psychological limitations stemming from a

work-related injury.  (R. 123, 125.)  The application was denied initially and upon

reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.

On May 23, 2011, an administrative law judge held a hearing at which plaintiff,

represented by counsel, appeared and testified.  (R. 31.)  A vocational expert  also

testified.  On June 28, 2011, the administrative law judge issued a decision finding that

Wolfe was not disabled within the meaning of the Act.  (R. 17-21.)  On October 3, 2011,

the Appeals Council denied plaintiff's request for review and adopted the

administrative law judge's decision as the final decision of the Commissioner of Social

Security.  (R. 1-2.)

**Age, Education, and Work Experience.**  Ralph Wolfe was born April 27, 1973.

(R. 165.) He has a high school education.  (R. 20.)  He has worked as a truck driver,

waiter, and cashier.  He last worked June 4, 2008.  (R. 175.)

**Plaintiff's Testimony**.  The administrative law judge summarized Plaintiff's

testimony at the hearing as follows:

> The claimant alleges that he is unable to work due to pain in his back,
> neck, and legs; psychological conditions; and a traumatic brain injury
> (Exhibit 2E).  According to the claimant, he is in constant pain, his left
> knee swells, his fingers are numb, his neck is stiff, he suffers headaches
> and blurred vision, and he has not had a good night's rest since he was
> involved in an accident on June 4, 2008 (Exhibits 2E, 5E, 9E).  He claims
> that up to four times weekly, he experiences severe headaches that last up
> to five hours (Hearing Testimony).  The claimant further alleges that he is
> comfortable only when lying down, and that he lies in bed four to six
> hours daily (Exhibit 5E; Hearing Testimony).  He claims that he cannot lift
> more than ten pounds, that he can stand no more than five minutes, that
> he can sit no more than twenty minutes, that he has difficulty climbing
> stairs, that he has impaired balance, and that he requires a cane to

ambulate (Exhibits 2E, 5E, 9E; Hearing Testimony).  He claims that he has
a fear of leaving his home, is unable to concentrate, does not complete
tasks, and experiences memory problems that require him to write
everything down (Exhibits 2E; 5E, 9E).  The claimant alleges that he often
feels antisocial and that he does not handle stress well (Exhibit 9E).

(R. 14.)

**Medical Evidence of Record**.

**Physical Impairments.**

On June 4, 2008, plaintiff was treated at the emergency department at Mount

Carmel East following an accident at work. He was treated for traumatic loss of

consciousness. (R. 312-22.)

A June 25, 2008 MRI of plaintiff's lumbar spine revealed right posterolateral disk

herniation and associated radial tear L1-2, disk bulging and associated radial tear at L2-

3, disk bulging at L3-4 and L4-5, neural encroachment from L1-2 though L4-5. (R. 402-

03.)

Joseph E. Kearns, D.O. On June 5, 2008, Dr. Kearns treated plaintiff at the

outpatient clinic. He diagnosed concussion, cervical, thoracic, and lumbar sprain,

sprained bilateral hips, left knee sprain, and sprained bilateral shoulders. (R. 308-09.)

On June 12, 2008, plaintiff reported he was still a lot of pain in his lower back and left

knee. He had headaches and trouble sleeping. (R. 326.) On June 26, 2008, Dr. Kearns

noted that plaintiff's reflexes were equal. Seated straight leg raise caused him a little bit

of back discomfort, but no point tenderness, spasm or step off was noted. (R. 406.)

On July 29, 2008, plaintiff reported constant headaches since his accident. He had lower back pain and neck pain. His right leg felt numb, and his left knee felt spongy at times. He had burning pain in his bilateral hip area. On physical examination, he could walk on heels and toes. He could squat and rise from a squat although it caused him pain. He had mildly limited range of motion of the cervical spine. (R. 346.)

Carole A. Miller, M.D. On July 28, 2008, Dr. Miller examined plaintiff. Since his injury, plaintiff has continued to have back pain and numbness in his legs. Dr. Miller recommended epidural steroid injections in addition to continuing water therapy. She opined that his back pain may be due to a small compression fracture of T12, which should heal spontaneously. (R. 344-45.)

Eric A. Schaub, M.D. M.P.H. On August 29, 2008, Dr. Schaub reevaluated plaintiff for contusion of L5 radiculopathy. Plaintiff reported that his pain, and particularly his radicular symptoms, were better. Plaintiff could sit without difficulty. Strength was 5+/5+ in the lower extremities. Sensation to light touch was intact except over the right L5 dermatone where it was slightly diminished compared to the left L5 dermatone and compared to the right S3 dermatone. (R. 303.)

On October 10, 2008, plaintiff reported making some progress with aquatic therapy. On examination, he was able to get on and off the table without difficulty. He had some tenderness of the lumbar spine. There was no spasm. Straight leg raising to 30 degrees resulted in right leg radicular symptoms. (R. 330.) On November 7, 2008, plaintiff reported decreased hearing on the left side. There was fluid behind the left

4

tympanic membrane. He had tenderness of the lumbar spine and the paraspinal muscles. Deep tendon reflexes were 1+ and symmetrical in the lower extremities. (R. 333.)

On July 31, 2009, Dr. Schaub indicated that plaintiff had received two epidural injections. Dr. Schaub recommended that plaintiff not have the third scheduled injection. Instead, he believed plaintiff should see Dr. Miller in Neurosurgery to explore surgical options and a spinal cord stimulator. (R. 524.)

On November 18, 2009, Dr. Schaub reevaluated plaintiff for lumbosacral strain with lumbar radiculopathy, lumbosacral neuritis, depressive psychosis, and concussion without coma, and head injury. Plaintiff walked with a cane and had a very slow and somewhat antalgic gait. (R. 663.)  On February 10, 2010, plaintiff reported that his pain was unchanged. He continued to have severe knee pain and low back pain. He had tenderness of the lumbar paraspinal muscles, with no spasm. Deep tendon reflexes were difficult to elicit in the lower extremities. (R. 676.) On January 12, 2010, plaintiff had flat affect. Sensation was decreased over the left L5 and S1 dermatones. (R. 677.)

William Reynolds, M.D. On August 14, 2008, Dr. Reynolds completed an independent medical exam. Wolfe reported that had worked as a truck driver. He was injured while unloading product utilizing the pallet jack. It was raining, and he slipped and fell off the truck onto the concrete. The jack fell on top of him. He struck his head on a post during and lost consciousness for 20-30 minutes.

Wolfe complained of throbbing pain in his low back. He experienced periods of numbness in his legs at the hips and knees 4-5 times per day. He had constant headaches and neck stiffness.  Dr. Reynolds concluded that although plaintiff had pre-existing degenerative changes involving the lumbar spine, his current complaints were likely the result of an acute injury sustained at the time of his fall, particularly the EMG showing L5 radiculopathy, which was consistent with his leg symptoms. (R. 305-07.)

Nancy V. Rodway, M.D., M.P.H. On February 11, 2009, Dr. Rodway examined plaintiff. Plaintiff identified his pain as a 9 on a ten-point scale. Plaintiff walked with a significant limp. He had suprapatellar effusion. He had joint line tenderness medially and positive McMurray's. He had tenderness in the L5-S1 interspace and significant tenderness in the T10 interspace. He was unable to toe walk or heel walk primarily because of his knee injury. (R. 350-51.)

On November 25, 2008, plaintiff presented unexpectedly with complaints of being very depressed and feeling suicidal. He was frustrated with his physical limitations and had difficulty controlling his pain. He slept poorly because of pain. He had difficulty with balance. Plaintiff had blunted affect and impaired short-term memory. He had difficulty heel and toe walking. He had pain over the medial joint line on the left side and had positive McMurray's on the left.  Dr. Rodway diagnosed traumatic brain injury with loss of consciousness, depression, impotence, chronic pain syndrome, lumbar radiculopathy, and left knee strain with signs and symptoms of

meniscal tear. She recommended that plaintiff undergo neuropsychiatric testing. (R. 354-55.)

On January 13, 2009, Dr. Rodway recommended that plaintiff begin his own cognitive therapy because the neuropsychiatric testing had been delayed. She recommended that he complete word-finding puzzles and read books. (R. 361.)

In a February 11, 2009 letter, Dr. Rodway indicated her opinion that plaintiff's T12 compression fracture should be allowed in his claim. (R. 388.)  On March 11, 2009, Dr. Rodway noted that steroids had provided him some relief, and he was able to get some sleep. Dr. Rodway noted improvements in plaintiff's left knee strain, depression and chronic pain syndrome. His traumatic brain injury and lumbar radiculopathy remained unchanged. (R. 478.)

A March 27, 2009 MRI of plaintiff's left knee revealed patellar cartilage thinning and a small effusion. There was a radiopaque foreign body within the subcutaneous tissues overlying the patellar tendon. He had chronic strain of the medial collateral ligament, but there was no evidence of meniscal tear. (R. 378.)

In a May 22, 2009 letter, Dr. Rodway indicated that she viewed the video recordings of plaintiff made from March 12 though April 19, 2009. All of the activities she witnessed were compatible with the industrial injuries he suffered and did not suggest malingering or symptom magnification. (R. 529.)

In a May 5, 2009 letter, Dr. Rodway provided her medical opinion to rebut the conclusions of Dr. Hauser. Dr. Rodway noted that Dr. Hauser failed to document any

cranial examination and did not discuss any standard clinical features of concussion. Despite acknowledging an MRI depicting a foreign body within the subcutaneous tissues and noting tenderness during the physical examination of plaintiff's knee, Dr. Hauser failed to mention any additional allowances for the knee, suggesting bias, according to Dr. Rodway. Dr. Hauser noted that plaintiff was unable to walk on his toes, but he still concluded that plaintiff was maximally medically improved. Dr. Rodway argues that his findings were consistent with finding of lumbar radiculopathy and that plaintiff should have been permitted to go forward with his scheduled epidural injections.  Dr. Rodway argues that Dr. Hauser's opinion that plaintiff could go back to full-work duty without restrictions, even though he needs to be careful how he twists, bends, and lifts, was contradictory.  (R. 535-536.)

Kenneth A. Writesel, D.O., M.P.H.  On December 18, 2008, Dr. Writesel performed an independent medical evaluation. Plaintiff complained of pain and swelling in his left knee. He had daily headaches and short-term memory loss. He had throbbing pain from L1 to S1, radiating into his legs. He had some numbness from his hips to his knees. On physical examination, plaintiff was able to toe/heel stand and walk. Straight leg raising was negative bilaterally. Deep tendon reflexes were 2/4 and symmetrical in the patellar and Achilles tendons. He had palpatory tenderness in the bilateral lumbosacral areas without gross myospasm, nodularity, or trigger points. Range of motion in the lumbar spine revealed flexion to 60 degrees, extension to 10 degrees, side bending right 16 degrees, and side bending left to 15 degrees. Examination

of the left knee revealed no erythema, edema, ecchymosis, or effusion. There was no atrophy of the quadriceps. There is negative anterior-posterior drawer sign. There was mild patellofemoral crepitus with active range of motion. Plaintiff had subjective complaints of tenderness of the cervical spine. He had full range of motion of the cervical and thoracic spine.

Dr. Writesell concluded that plaintiff was capable of full-duty work. (R. 460-64.)

In a March 4, 2009 addendum to his independent medical evaluation, Dr. Writesel indicated that there was evidence to support the necessity of additional treatment based on plaintiff's L5 radiculopathy. Dr. Writesel recommended that plaintiff undergo physical therapy and epidural steroid injections. Dr. Writesel concluded that plaintiff would not be capable of performing full-duty work. Plaintiff should perform sit-down work. He should not bend, squat, or crouch. He required the ability to change positions frequently. He was limited in his abilities to lift, push, or pull weights greater than 20 pounds. These restrictions were temporary. (R. 399-400.)

Walter H. Hauser, M.D. On April 13, 2009, Dr. Hauser examined plaintiff. On examination, plaintiff had 25% limitation of his cervical spine motion, flexion, extension, lateral bending and rotation. He had diffuse tenderness in the entire lumbar spine. He had 75% limitation of the lumbar spine motion, flexion, and extension, lateral bending and rotation. Straight leg raising in the sitting position was limited on the left and negative on the right. In the supine position he complained of back pain at 20 degrees on the right and 60 degrees on the left. He was unable to walk on his toes but

9

he could walk on his heels. Dr. Hauser opined that there was evidence from his MRI and his isotopic bone scan indicating that he had significant preexisting degenerative changes involving his spine and his knees. (R. 472 -76.)

On June 24, 2009, Dr. Hauser wrote a letter responding to Dr. Rodway's evaluation of his report and his impressions following his viewing of surveillance videos. He noted that when he examined plaintiff, he had 75% limitation of lumbar spine motion. Dr. Hauser believed that his examination findings were evidence of symptom exaggeration because the surveillance video indicated activities well beyond what he demonstrated at the time of his examination. Dr. Hauser opined that plaintiff was using his subjective complaints to obtain narcotics beyond what was necessary and reasonable for his current condition. (R. 541-43.)

<u>Michael Cannone, D.O.</u> On August 25, 2009, Dr. Cannone performed a consultative evaluation on Wolfe's left knee. He diagnosed plaintiff with sprain of the left knee with subsequent contusion, laceration, and retained foreign body. Dr. Cannone recommended that plaintiff undergo surgery to remove the foreign body to see if this provided plaintiff relief.

<u>William Bolz, M.D.</u> On November 16, 2009, Dr. Bolz, a state agency physician, reviewed the evidence of record and completed a physical residual functional capacity assessment. Dr. Bolz opined that plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. He could stand and/or walk for about 6 hours in an 8-hour day. He could sit for about 6 hours in an 8-hour day. His ability to

10

push and/or pull was unlimited. Plaintiff could occasionally climb, stoop or crouch. Plaintiff's allegations were only partially credible. (R. 627-34.)

Linda Hall, M.D. On April 14, 2010, Dr. Hall, a state agency physician reviewed the evidence of record and completed a physical residual functional capacity assessment. Dr. Hall opined that plaintiff could occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. Plaintiff could stand ad/or walk for at least 2 hours in an 8-hour day, but a medically required hand-held assistive device was necessary for ambulation. He could sit for about 6 hours in an 8-hour workday. Plaintiff could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. He could never climb ladders, ropes, or scaffolds. (R. 692-99.)

Raymond Tesner, D.O. On February 11, 2011, Dr. Tesner evaluated plaintiff's knee and recommended that he undergo surgery to have possible foreign body removed. (R. 707.)

Charles D. Baughman, M.D. On January 14, 2011, Dr. Baughman, plaintiff's treating physician, completed a medical assessment of plaintiff's psychiatric limitations. Dr. Baughman opined that plaintiff's abilities to follow work rules and relate to co-workers were good. He abilities to deal with the public, use judgment when dealing with the public, interact with supervisors, and function independently were fair. Plaintiff's abilities to deal with stress or maintain attention and concentration were poor. Plaintiff had fair abilities with respect to understanding, remembering and carrying out complex job instructions and detailed instructions were fair. He was able to

11

maintain his personal appearance, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. (R. 743-46.)

Dr. Baughman also completed a medical assessment of pain and fatigue. Dr. Baughman treated plaintiff for a herniated disc. He did not anticipate that plaintiff's pain or fatigue would improve. He opined that plaintiff's pain prevented him from working and that his symptoms were reasonable in light of the objective findings. He indicated that plaintiff was not malingering. Dr. Baughman indicated that plaintiff could sit or stand/walk for less than 2 hours. Plaintiff would need to lie down at unpredictable intervals during the day. Plaintiff could occasionally lift less than 10 pounds. (R. 747-49.)

**Psychological Impairments.**

Beal D. Lowe, Ph.D. On February 11, 2009, Dr. Peal, a psychologist, evaluated plaintiff to determine whether he had a psychiatric impairment as a result of his 2008 industrial injury.

Dr. Lowe noted that plaintiff reported symptoms suggestive of a traumatic brain injury. Plaintiff had blurred vision, an inability to remember numbers, poor short-term memory, severe headaches, and a need to write down information in order to remember it. Wolfe reported depressive symptoms. He had reoccurring nightmares. He had anxiety and intrusive thoughts and memories of the accident. The Beck Depression Inventory indicated he had severe depression. (R. 385-87.)

12

Dr. Lowe diagnosed post-traumatic stress disorder, chronic; major depressive disorder, single episode, moderate; pain disorder associated with both psychological factors and a general medical condition; and a rule out diagnosis of traumatic brain injury. Dr. Lowe assigned a current Global Assessment of Functioning ("GAF") score of 60. Plaintiff's highest GAF score in the past year was 65. Dr. Lowe concluded that his psychological conditions were a direct and proximate result of his industrial accident.

An unsigned and undated report attributed to Dr. Lowe indicated that plaintiff's ability to tolerate stress is markedly limited by irritability, low energy and reduced persistence and pace. His concentration and memory were impaired to a degree that would prevent employment. (R. 688-89.)

Lee Howard, Ph.D. On February 12, 2009, Dr. Howard completed a psychological examination of plaintiff. Plaintiff reported variable memory and reduced concentration. He was depressed and had crying spells five days a week. His energy level was poor. His appetite was average. His sleep was broken.

Symptom Validity Testing-SIMS revealed test scores that were highly suspicious for a malingering tendency. Subtest elevations reflected tendencies to simulate physical symptomatology, emotional symptomatology, loss of intelligence and loss of memory. Dr. Howard noted that this profile type was often seen in individuals that were attempting to simulate head injury effects. His MMPI-II results indicated a high need for attention and/or approval and seen as histrionic. Individuals with this profile could

13

experience secondary neurotic symptoms, such as depression, somatization, and/or anxiety. His IQ testing was invalid.

Dr. Howard concluded that there were no neuropsychological findings to substantiate any subjective complaints related to a head injury. (R. 436-56.)

Donald J, Tosi, Ph.D. On April 13, 2009, Dr. Tosi, a psychologist, completed a psychological evaluation. On mental status evaluation, plaintiff was alert and oriented in all spheres. His concentration and attention were mildly reduced. His thoughts were clear, understandable, relevant and goal-directed. Plaintiff reported that he was "mad as hell" at his employer because they messed up his injections. He felt hopeless and worthless. He reported having daily crying spells. He felt like a wreck emotionally.

Plaintiff's daily activities included taking care of two dogs, talking to people on the phone, preparing meals on occasion, reading the mail, watching television, visiting with relatives and friends that come over, and attending medical appointments. Plaintiff was able to case for his basic personal needs and drive independently.

Testing revealed a strong "fake bad" response set in which Wolfe overly exaggerated and distorted his problems. Dr. Tosi opined that plaintiff's symptoms were likely less than indicated by the test results. Test scores indicated that Wolfe may have major depression or a severe adjustment disorder. Dr. Tosi found that plaintiff was overly pessimistic, negative, and adopting a martyr-like role. Wolfe had poor impulse control and acted directly on feelings to gain immediate gratification with little forethought. (R. 563-71.)

On May 26, 2009, Dr. Tosi reviewed the surveillance video in which plaintiff was observed driving a car to a donut shop, to the State of Ohio library, to a residence, to sandwich shop, to a grocery store, to OSU rehabilitation center, to Peking House, and to a gas station. The videos did not alter his original opinion that plaintiff suffered from mild depression. (R. 533.)

Mahmoud Shehata, M.D. On October 8, 2009, Dr. Shehata, a psychiatrist, began treating plaintiff. Plaintiff complained that he was very depressed. Plaintiff reported difficulty sleeping at night. He had good appetite. He lacked energy and motivation. He experienced crying spells. He felt helpless and hopeless. On mental status examination, Wolfe's mood was dysphoric with reactive affect. Dr. Shehata diagnosed major depression, single episode, moderate. He assigned a GAF score of 55. (R. 639-40.) On October 23, 2009, plaintiff reported lack of energy and motivation, crying spells, and pain. (R. 638.) On November 9, 2012, Wolfe continued to report symptoms of depression. (R. 637.)

Cathy Della Mora, Ph.D. On August 20, 2009, Dr. Mora, a clinical neuropsychologist, examined plaintiff. Test results indicated a pattern of neurobehavioral abnormality, more prominent on measures of learning and memory. The possibility of mild cerebral dysfunction could not be ruled out. Most of the neurobehavioral abnormalities observed were likely secondary to the combined influences of significant and chronic psychiatric distress related to his accident, chronic pain, and other physical symptoms, fatigue, ongoing medical concerns, behavior style

15

and personality characteristics. His psychiatric status, independently and in combination with his other physical health issues, undermined his overall level of functioning. Dr. Mora recommended plaintiff undergo a psychiatric medication evaluation and individual counseling.  (R. 604-07.)

Patricia Semmelman, Ph.D. On October 6, 2009, Dr. Semmelman completed a psychiatric review technique and a mental residual functional capacity assessment. Plaintiff was diagnosed with major depressive disorder and post-traumatic stress disorder. Plaintiff had mild restriction of daily activities, moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. He had no episodes of decompensation.

Plaintiff had moderate limitations in his ability to understand and remember detailed instructions. With respect to sustained concentration and persistence, plaintiff was moderately limited in his abilities to carry out detailed instructions, to maintain attention and concentration for extended periods and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. With respect to social interaction, plaintiff was moderately limited in her ability to interact with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. With respect to adaption, plaintiff was

16

moderately limited in his ability to respond appropriately to changes in the work setting.

Dr. Semmelman noted inconsistencies in the psychological evaluations. She believed that plaintiff's allegations were not entirely credible and that no single source could be given weight. She opined that plaintiff retained the capacity to interact occasionally and superficially; to receive oral and written instructions and ask questions appropriately in a smaller or more solitary and less public to nonpublic work setting; and to cope with the ordinary and routine changes in a work setting that is not fast-paced or involving high demands. (R. 608-26.) Karla Voyten, Ph.D. review Dr. Semmelman's assessment and concurred in her findings.  (R. 691.)

**Administrative Law Judge's Findings**.

1.   The claimant meets the insured status requirements of the Social Security Act through September 30, 2012.

2.   The claimant has not engaged in substantial gainful activity since June 4, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*)

3.   The claimant has the following severe impairments: degenerative disc disease of the lumbar spine without lumbar spinal stenosis; major depressive disorder; and post-traumatic stress disorder (20 C.F.R. 404.1520(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except

17

the claimant can never climb ladders, ropes or scaffolds, and can only occasionally crawl, crouch, kneel, stoop, balance, and climb ramps or stairs.  Balancing should be performed with the use of a hand-held assistive device. In addition, the claimant is limited to frequent gross manipulation and fine-finger manipulation of objects, and must avoid all exposure to the use of hazardous machinery, operational control of moving machinery, and unprotected heights. Finally, the claimant is limited to simple, routine and repetitive tasks, in a work environment where changes occur on no more than an occasional basis, and where interaction with the general public or coworkers occurs no greater than occasionally.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.     The claimant was born on April 27, 1973 and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from June 4, 2008, through the date of this decision (20 CFR 404.1520(g)).

(R. 12-21.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. ..."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It means "'more than a scintilla.'"  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments**.  Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because the administrative law judge failed to consider, or even mention, two medical statements precluding work completed by his treating physician, Dr. Charles Baughman. Plaintiff argues that the administrative law judge must state his reason for crediting or rejecting particular items of evidence. Courts are not at liberty to speculate on the basis of an administrative agency's order or adopt post hoc rationalizations for agency action in lieu of reasons enunciated by the

decision maker. Plaintiff maintains that the administrative law judge's utter failure to mention the limitations outlined by Dr. Baughman impact all of his findings, including findings concerning the plaintiff's credibility and the interpretation of the longitudinal record.

**Analysis**. The administrative law judge failed to discuss or mention Dr. Baughman's opinion. Defendant maintains that because Dr. Baughman's findings were wholly unsupported by his own treatment notes and the other evidence of record, the administrative law judge's error was harmless. In *Rebecca Moeller v. Commissioner of Social Security*, No. 11-6199 (Jul. 20, 2012 6th Cir.), the Sixth Circuit held that the failure to explain why a doctor's limitations on the claimant's ability to sit were rejected cannot be harmless error. In *Moeller*, the record did not support the administrative law judge's finding that the claimant could sit for six hours a day. Here, there is substantial evidence in the record to support the residual functional capacity formulated by the administrative law judge. Nevertheless, the administrative law judge violated  20 C.F.R. § 404.1527(d)(2) by failing to give good reasons for his rejection of Dr. Baughman's opinion.

An administrative law judge must give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2). If the opinion of a treating source is not accorded controlling weight, the administrative law judge must

consider the following factors in evaluating that opinion: the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.*

Relying on *Wilson v. Commissioner of Social Security*, defendant argues that the error was harmless. In *Wilson,* the Sixth Circuit stated:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. "[A] procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway." *Mazaleski v. Treusdell*, 562 F.2d 701, 719 n. 41; *see also Ingalls Shipbuilding, Inc. v. Dir., Office of Workers' Comp. Programs*, 102 F.3d 1385, 1390 (5th Cir.1996). To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability the violate the regulation with impunity and render the protections promised therein illusory. The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to "set aside agency action ... found to be ... without observance of procedure required by law." Administrative Procedure Act, 5 U.S.C. § 706(2)(D) (2001).

*Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 546 (6th Cir. 2004). Because the administrative law judge failed to provide any explanation for his rejection of Dr. Baughman's opinion, the Magistrate Judge RECOMMENDS that this case be REMANDED.

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the

Court, specifically designating this Report and Recommendation, and the party thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgement of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Small v. Secretary of Health and Human Services*, 892 F.3d 15, 16 (2d Cir. 1989).


<u>s/Mark R. Abel</u>
United States Magistrate Judge